IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
MARY MENDEZ,                   )
                               )
            Plaintiff,         )
                               )
vs.                            )     Case No. 07-1328-WEB
                               )
MICHAEL J. ASTRUE,             )
Commissioner of                )
Social Security,               )
                               )
            Defendant.         )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On May 8, 2007, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 14-23). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 16). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since September 29, 2004, the

alleged onset date (R. at 16).  At step two, the ALJ found that plaintiff had the following severe impairments: status-post cervical fusion and left shoulder tendenitis (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17).  After determining plaintiff's RFC (R. at 17), the ALJ found at step four that plaintiff was unable to perform past relevant work (R. at 22).  At step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 22-23).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III.  Did the ALJ err improperly discount the treating source opinion of Dr. Sara Johnston?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the

Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

On July 14, 2005, an independent medical examination of the

plaintiff was conducted by Dr. C. Reiff Brown (R. at 258-260). His recommendations regarding plaintiff's work limitations, contained as part of a three page evaluation, were as follows:

> I would not recommend work that involves flexion, extension or rotation of the neck more than 30 degrees. She should work in a warm environment. She should avoid use of the left hand above shoulder level and any lifting above shoulder level. She should not attempt to reach with the left arm more than 12 inches away from the body. No lifting with the left arm at a distance greater than 12 inches from the body. Between waist and chest level lifting with the left arm should be no more than 5 pounds occasionally, 2 pounds frequently.

(R. at 260).

On October 6, 2005, Dr. Michael Johnson, who had previously treated and/or examined the plaintiff, and who prepared a two page report of his examination, set forth his opinions regarding plaintiff's work limitations:

> A request was made on an opinion on work restrictions. I do think that her left upper extremity restrictions of avoiding using the left hand above the shoulder level or lifting above the shoulder level as well as keeping the left arm within 12 inches from the body are appropriate. I also believe that lifting below shoulder level no more than 5 pounds occasionally and 2 pounds frequently seem to be appropriate. As far as her restriction of being in a warm environment only, I see nothing objective which would prevent her from working in a cool environment. It appears that the reason she was placed on that restriction by Dr. Brown was purely based on subjective symptoms only. This is not a circulatory problem that would be a medically dangerous condition to be in a cold

> environment. It would be my medical opinion
> that cool or cold temperatures would not
> cause any structural, organic, physiologic,
> or anatomic damage or worsening of her
> condition. The restriction appears to be
> based on subjective symptoms only and has no
> objective support in the exam or records
> submitted.

(R. at 235).

A physical RFC assessment was prepared on February 28, 2006 (and affirmed on March 10, 2006) which found that plaintiff was limited to light work (lifting and/or carrying 20 pounds occasionally and 10 pounds frequently) (R. at 263), and which adopted many of the limitations set forth above by Drs. Brown and Johnson:

> Limited to no left arm above shoulder level
> or overhead reaching.  No reaching past 12
> inches away from the body.  Lifting only 2-5
> lbs with left arm.  Left arm should
> essentially be for less than occasional use
> and assist.  No restriction to right UE.

(R. at 265).  The state agency consultant indicated that plaintiff appeared "capable of this one armed work RFC" (R. at 267).  The assessment included detailed discussions of the evidence which the state agency medical consultants relied on in making their findings (R. at 263-264, 267-268, 270).

On March 23, 2007, Dr. Sara Johnston, who began treating plaintiff in February 2006, stated the following regarding plaintiff's ability to work:

> The patient's medical problems include
> chronic neck pain, depression, seizure

8

> disorder and type 2 diabetes mellitus. The patient did undergo a laminectomy and a foraminotomy of the fourth, fifth and sixth cervical vertebrae September of 2004. I do feel that the patient is disabled due to her chronic medical problems. Due to her seizure disorder and depression, the patient would have problems keeping up pace required of full-time employment. She would also have difficulty with concentration. Her chronic neck pain could also require her to have frequent absences from work and would require further breaks for rest.

(R. at 273).

The ALJ found that plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity for a range of light work with lifting or carrying 10 pounds frequently and 20 pounds occasionally, sitting about 6 hours in an 8 hour work day, and standing or walking about 6 hours in an 8 hour work day with no crawling or climbing of ladders, ropes or scaffolding.  Manipulative limitations include no left arm above shoulder level or overhead reaching, no reaching past 12 inches away from the body and lifting only 2 to 5 pounds with the left arm.  The left arm is essentially for less than occasional use and assist with no restrictions to the right upper extremity.

(R. at 17).  The ALJ gave greater weight to the opinions of Dr. Brown, Dr. Michael Johnson and the state agency physicians in establishing plaintiff's RFC (R. at 21-22).  The ALJ discounted the opinions of Dr. Sara Johnston based on his finding that Dr. Johnston's opinions were not supported by the record as a whole, including the contrary medical opinions and the daily activities of the plaintiff (R. at 21-22).

The opinion of Dr. Sara Johnston was largely conclusory, stating that plaintiff is disabled. She did state that plaintiff would have problems keeping up the pace required of full-time employment, have difficulty with concentration, and that her neck pain would cause her to have frequent absences from work and require further breaks for rest. However, her opinion provided few specifics with regard to limitations, as the ALJ and vocational expert noted during the hearing (R. at 346-347). Furthermore, the opinions of Dr. Johnston are not supported by the opinions of any other treating or examining professionals. A treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence. Griner v. Astrue, 2008 WL 2372481 at *1 (10th Cir. June 12, 2008). By contrast, the reports of Dr. Brown, Dr. Johnson and the state agency medical consultants provided a much more detailed discussion of the medical evidence and the basis for their limitations on plaintiff's ability to work. The ALJ, in relying on the medical opinions of Dr. Brown, Dr. Johnson and the state agency medical consultants, provided specific, legitimate reasons for rejecting the opinions of Dr. Johnston. The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).

**IV. Did the ALJ err in his credibility analysis of the plaintiff?**

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining

that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The ALJ indicated that the medical opinions of Dr. Brown and Dr. Johnson, and plaintiff's daily activities, are consistent with light work activities (R. at 21).  The medical opinions of Dr. Brown, Dr. Johnson, and the state agency medical consultants support a finding that plaintiff can perform light work with the restrictions set forth in the ALJ's RFC findings.  Substantial evidence existed in the record that plaintiff was not credible insofar as she asserted that she could not work an 8 hour day on a regular basis.  As noted above, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett, 395 F.3d at 1173.

Plaintiff attempts to argue that the ALJ did not agree with plaintiff's claim that she could not do computer work full-time (Doc. 13 at 3-5).  However, at the hearing, the vocational expert (VE), in response to questioning from the ALJ, testified that plaintiff could not perform a job using a computer on a regular basis during the day because of the restrictions on her dominant left upper extremity as set forth by the ALJ in his RFC findings

(R. at 348-349). Thus, the ALJ's RFC findings precluded computer work full-time and were therefore consistent with her testimony. The ALJ never stated that he did not believe plaintiff's statement that she could not do computer work full-time, he simply noted what plaintiff had said.

The ALJ also relied on the statements of Dr. Shafer, plaintiff's treating physician, who indicated in 2005 that he did not believe that she would get better and that her complaints of pain would be ongoing until plaintiff received her worker's compensation settlement (R. at 20, 172). Dr. Shafer also noted at one point that plaintiff never did physical therapy and refused to do physical therapy (R. at 21, 172). This information from a treating physician may be used to discount plaintiff's allegation that she cannot work.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on August 21, 2008.

                                          s/John Thomas Reid
                                          JOHN THOMAS REID
                                          United States Magistrate Judge